The Hon. Lawrence Gattei Your Honours, may it please the Court, my name is Lawrence Gattei on behalf of the Appellant. Your Honours, this issue or this matter appears to be your first impression before this Honourable Court, given its history, given its circumstances, but there is less argument as to what the issue here is. And Your Honour, what this Court has called to do is to make a ruling as to whether the means of achieving a central purpose of a conspiracy as agreed is an essential component of a conspiracy, as defined under 18 U.S.C. Section 371. Your Honours, we believe it is, and we are requesting the Court to make that holding that the means of achieving the central purpose of a conspiracy is as important as the central purpose of that conspiracy. Yes, but wasn't your client's overall desire to get into the United States legally, and that was the genesis of all of this, and everything that she did, wasn't that all part of the conspiracy? Well, not necessarily, Your Honour, because there are various means of achieving that particular purpose, which in this case is change of status. Yes, initially, as the conspiracy was formulated, there was a way that she was supposed to achieve that central purpose, which is change of status. Yes, but from beginning to end, she had to have a marriage somewhere in the package in order to achieve her goal. And at the end, after the divorce, she still used the fact of the marriage in order to file the final offending document, which is the only thing which falls within the statute of limitations. Why isn't that enough for a conspiracy? Well, it should not be enough, Your Honour, because initially, as formulated, the marriage was supposed to be the critical component of her change of status. It has to be marriage, and her U.S. citizen spouse was then going to help her all the way by filing documentation. Yes, you can argue that he withdrew clearly when he didn't show up for the hearing, but the person who put them together, there's no evidence that he withdrew, and there's certainly no evidence that she withdrew, so that there was at least two people, even to the end, because the person who put them together, there's no evidence that he ever withdrew from the overall conspiratorial scheme. I'm not even sure we know exactly what was the agreement or arrangement between the person who put them together and his or her involvement in this matter. I'm not sure that's quite clear, even from the indictment. Well, here we have two actors agreeing and even money-changing for my client to change her status. He withdrew affirmatively, and she also affirmatively took action to the draw, one by filing for divorce, and the second, this was by the way, it was the application of abuse spouse petition was something she came up with afterwards, acting unilaterally. How do we know that? The appellant went all the way, went to Maine, at least three times as far as the indictment is concerned, requesting the U.S. citizen's spouse, in this case, Frank, to go to the interview. He declined all the three times. No, but that doesn't answer Judge Stahl's question about the other party to the conspiracy. When you said she did this unilaterally, that would be significant if by unilaterally you meant the other party, the third party to the conspiracy who put them together, that was never part of the plan, but how do we know that was never part of the plan? What we know from the indictment, I thought, was that her intention was through the marriage to get a change of status, and what we have is a form she files referencing the marriage as part of her plea for the change of status, so why does that not suggest it was part of the initial agreement with that third party? Well, the reason we don't suggest that, Your Honor, is that in between the marriage and Frank with the drawing, in between there was a process. Both of them, after they got married, they went to an attorney's office. Both of them filled out documentation, and that was part of the reason why she was getting married in the first place. Getting married was not so that she could file a violence-based petition in order to change status. How do we know that? Well, we know that because that's in the indictment. They went to the attorney's office. What's in the indictment? Is the citizen spouse petition mentioned in the indictment? I thought the indictment alleged that she would, entering into a sham marriage, with the object of obtaining an adjustment of her status to a lawful status. Yes. That's the only crime she's charged with. Well, that's right. So she tries to do it through the citizen spouse petition. Right.  Yes. And she then tries to do it through the battered spouse petition, at which point the plot unravels because she's caught. So how is that any different than a couple of people who conspire to rob a store, and they try to get in through the front door? That's their original intent. They find that they can't pick the lock, so they go around to the back and break a window and get in that way. It's just a different set of means in pursuit of the same objective. Well, the objective is there, and that's an issue, but the objective can be achieved in various means. All he was saying is that, as initially formulated, and there has to be some cooperation between both actors, as initially formulated by both actors, in this case Frank and the appellant, he was not getting paid, and I think the indictment is clear, he was not getting paid to get married. I'm interested in the third actor. Yes. I understand the point about the citizen spouse, but there is a third party to the conspiracy. And the question is, just to take Celia's example. Right. I think you have to concede, if you go in the back door, it's the same as if you were in the front door. You want to say they robbed another store entirely. And how do we know that it was another store entirely? How do we know that the agreement with that third party did not contemplate this means of accomplishing what the indictment alleges was a general end of using the marriage to change the status? Well, I think the indictment has to be clear, because it's required to be clear in order to give notice to the appellant. Now, I think that burden is up to the government. If the indictment is not clear, which by the way is self-serving because it's supposed to help the prosecution, it's not alleged how the third actor was involved in the violence abuse petition. The indictment is silent on that, how the third actor was involved. Now, if it's silent, then it's ambiguous. It's vague. It has to be clear in order to give notice to the appellant. So, as far as... Was that argument made below? It wasn't made below. The argument... That it was too vague of an indictment. Well, I think one of the reasons, I think we made up a public policy argument, which is the reason why we have the statute of limitation is because it needs to effectuate Fifth Amendment due process right to give notice to the person who is being accused. If the indictment is not clear, then it's vague, it's ambiguous, and it violates Fifth Amendment right of the accused person having notice. If it was not clear as to the participation of the third actor, then that burden is up to the government. It's the prosecution's burden to prove your reasonable doubt how the third actor was involved in this case. And I don't think the indictment is quite clear as to how the third actor was involved in the abuse petition. All that we can deduce from that is that the appellant in this case, all by herself, came up with the decision to seek change of status by filing a violence petition. If you get on the conspiracy bus and do not clearly get off, you're still a member of the conspiracy. And the marriage broker never got off the bus as far as the facts of this case show. There's no reason to believe that he terminated his part of the conspiracy. Therefore, the conspiracy continued. The element of the conspiracy that she was seeking to do was to get a change of status. She needed the marriage in order to do that, and she used various attempts, using various statutes to get to the same point. It was the same ultimate goal that she had from the beginning. So why isn't that sufficient? I'm going to keep my remarks short unless the court has specific questions. I'd like to follow up on one question that the court posed to appellant. And that is that the court needs to focus on the fact that the appellant is not a member of the conspiracy. And the record before it demonstrates the formation of a conspiracy between three people. And there is no record support that those three people agreed on the exact means by which they would perpetrate the conspiracy. There was no agreement as to the nature of the false representations, whether there would be one or two or 12, whether it would involve solely the first application for a change of immigration status, or would continue throughout the natural life of the immigration process through naturalization. There's further no record support for any suggestion that Mr. Mbugwa, the third party, withdrew, nor any record support for the suggestion that he was not involved in the decision to file the violence against women petition. The record is silent as to that and as the court has... The stipulations are clear, Your Honor, that the object of the conspiracy was for Ms. Ngegi to obtain a change of status based on the marriage by making false representations to agencies of the United States government. It further specifically says that when she entered into her agreement with Mr. Mbugwa, the broker, their agreement had two goals. One was for him to make money and the other was for her to be in a position to apply for change of status based on the marriage he arranged. So the stipulations clearly indicate a dual purpose of their original conspiracy, one of which, as the court has identified, was for her to carry that marriage through for so long as necessary to obtain... ...the marriage was going to be the basis for getting the change of status, not a divorce and a claim that there was abuse in the marriage that would lead to a subsequent filing of a petition. Let's just say it was, if I thought it was ambiguous how to think about that stipulation, what should I do? Well, first of all, the government argues that it is not ambiguous. I understand that. But, sorry, I lost my train of thought. Were the court to determine that the stipulations were ambiguous as to the party's agreement as to what the ends were going to be, it's the government's position that the law of conspiracy does not require the parties to come to a meeting of the minds as to the exact means they are required to follow to achieve an agreed upon end. And here, even if the court were to determine that the wording of the stipulations is ambiguous as to the, whether a future petition for, based on a divorce and allegations of abuse would be included, the law of conspiracy is clear that once the agreement is made and the record supports the entrance into the agreement and overacts in furtherance of that agreement, it is not required that they agree specifically to the end. Specifically, how that be perpetrated. Based on the sham marriage into which all three parties agreed to enter. This case was submitted to the district court on stipulated facts? It was, Your Honor. And so the district court here, not a jury, acted as the trier? Correct. So if the stipulation was susceptible to competing inferences, or put another way, contained some seed of ambiguity, wouldn't that be for the fact finder to resolve? Well, that was going to be my exact point, Your Honor, because this court is, I believe the standard of review on finding the fact is clear error. Is clear error. In which case, unless this court were to determine that the record clearly did not support the finding of the district court, it would uphold that finding. I just want to make three quick points that I'm not sure were clearly fleshed out in the briefs. First of all, I'm aware from the court's decisions in the Doherty and Nazaro line of cases that the court looks for some indication that there's an outside limit to statute of limitations application in a particular case. And the government wants to make it clear that we are only arguing that for so long as she continued to seek a change of immigration status on the basis of this sham marriage, those acts would be considered overt acts in furtherance of the conspiracy. If, for instance, she had, after the CIS, after Mr. Frank had withdrawn, had she decided to, for instance, file for asylum, saying if I'm returned to my native land, I'll be subject to persecution, we would not be standing here arguing that that was an overt act in furtherance of this conspiracy. There was no nexus. Likewise, the record demonstrates in this case from the pre-sentence report that after the CIS finally denied her violence against women petition here, two weeks later she married another U.S. citizen and filed for a change of status through him. We would not argue that those would be covered. Different marriage, different conspiracy. Just going back to the first point about clear error, all the trier fact here had to go on was the text of the stipulation? Correct. There's nothing else about what the nature of the agreement was other than just the words of that stipulation? That's correct. Well, there were exhibits to the stipulations. Could you just say a little about, would the exhibits have been relevant to one of the two competing inferences with respect to how to read what that stipulation referred to? I can tell you what the exhibits were, although I'm aware that they were not made a part, specifically a part of the appendix in this case. They were the violence against women petition. They were the psychological evaluation that the appellate filed in support of the violence against women petition. But there's nothing about, what's the third party's name? Mr. Mbugwa. There's nothing about his view of the conspiracy? There is not. No. Most of the documents that were attached as exhibits to the stipulations were substantive documents supporting the allegations of overt acts. I think the parties are in agreement that he put the parties together, the USC spouse and the alien, Ms. Nguigi. He introduced them. He was present at the time of the marriage. He took money from her and paid Mr. Frank with it. And then the record is silent as to his involvement from that point forward. But as the district court, in our view, correctly found, there's no evidence whatsoever that he ever withdrew from the conspiracy. And no record evidence from which this court could conclude that Ms. Nguigi dreamt up this VAWA petition herself. We don't know that. All we know is that it was, that the record is silent. Two other quick points, if I may. The government said. Just on that, absent the stipulation, that wouldn't be enough for the government to win. I'm sorry. Absent the stipulation, the fact that the record's silent on that point wouldn't be enough for you to win. Well. You need to be relying on the stipulation, or is that wrong? Well, if the court is looking for record support of withdrawal, for instance. Oh, I see. It's not there. Here we have a situation where the government is in the back. I guess I'm looking for record support of the object of the conspiracy being more than just the marriage. Well, from the government's perspective, the stipulations clearly demonstrate that the goal both of the overarching conspiracy and of her specific agreement with Mr. Mbugwa was to put her in a position to apply for a marriage-based change of status, and that, therefore, as long as she continued to pursue that and there's no affirmative evidence that he withdrew, the conspiracy survives. Two other quick points. I've spent quite a bit of time talking about Nazaro and Doherty, which I think have a lot of relationships here. In Nazaro, I think there's an important distinction because there the Loan Within Time Act, the court construed as an innocent one where the defendant had bought a lieutenant's exam, taken the exam, cheated, gotten a promotion. It was solely the promotion that was within the end time, and the court found that to be an overt act in furtherance of the conspiracy, even though it characterized that as both unilateral and typically non-criminal. Here we have a very different situation where the Loan Within Time Act was perhaps the most illegal of all the things that she did because she not only lied on the documents, the forms that she filled out to submit to the Citizenship and Immigration Service, but she lied to the doctor who created the psychological report, which she then submitted to CIS. So different from Nazaro, the Within Time Act is distinctly fraudulent in this case, and therefore from a fairness perspective militates in favor of being considered an overt act. Thank you. Thank you. Thank you. Is Cronin not on the counsel? Excuse me. Is Attorney Bloom present? Attorney Crane? The next case will be number 14-1580, Stephen Cronin v. Commissioner of Probation. Thank you.